# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ALEXANDRIA ANDREWS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:15-cv-00580-AKK** |
| **SPERRY RAIL, INC.,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Alexandria Andrews filed this lawsuit against her current employer, Sperry Rail, Inc., alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count I), and sex discrimination and retaliation under Title VII (Counts II and III). Doc. 1. Presently before the court is Sperry Rail's motion for summary judgment, doc. 20, which is fully briefed, docs. 21; 32; 35, and ripe for review.[1] For the reasons stated more fully below, the motion is due to be granted.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the

---

[1] Sperry Rail's motion for extension, doc. 34, is **MOOT**.

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. B*ut see Pace v. Capobianco*, 238 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and

2

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

Andrews, who is female and African-American, currently works as a driver mechanic for Sperry Rail — a company that "conducts nondestructive testing for the railroad industry by scanning steel to check for integrity and defective conditions utilizing a fleet of specialized test vehicles." Doc. 21 at 3; *see also* doc. 22-3 at 5. The test vehicles are operated by a driver and a chief operator, who supervises the driver. Doc. 22-3 at 6.

Prior to her promotion to her current position, Andrews held the position of a driver and reported to Chief Operator Jamarion Warren. *Id.* at 9. On one occasion, when Warren purportedly provided Andrews unclear instructions regarding a tire repair, Andrews "had a confrontation" with Warren, *see* doc. 32 at 7, which resulted in Warren issuing Andrews a written reprimand for being "verbally aggressive," *see* doc. 33-1 at 8.

3

Sometime after this incident, Field Operator Shawn Numeracki purportedly observed Andrews's hostility and insubordinate interaction with Warren. *See* doc. 22-1 at 7. As a result, the company decided to transfer Andrews to a different Chief Operator. *See* doc. 22-2 at 2–3. When explaining the decision to Andrews, Numeracki mentioned that Sperry Rail could potentially transfer Andrews (who at that time worked in the Southeastern United States) to the Minnesota area. *See* doc. 22-3 at 22. Although Andrews had known from the start of her employment that Sperry Rail regularly transferred employees to other areas,[2] Andrews filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission challenging her potential transfer to Minnesota. *See id.* at 23; doc. 1-1 at 3–4. The company ultimately transferred Andrews to the Baltimore, Maryland area, where she currently works for Chief Operator Russell Yelverton. Doc. 22-3 at 9, 23. Andrews describes her current employment situation as "ideal" and hopes to continue working for Yelverton until his retirement. *Id.* at 29.

### III. ANALYSIS

In a nutshell, Andrews maintains that Sperry Rail discriminated against her based on her race and gender by denying her promotion to the positions of chief operator and driver trainer, and retaliated against her for filing an EEOC charge

---

[2] *See* doc. 22-3 at 6 ("I knew coming out bring this amount of clothing, you may not be home for months. I knew what to expect. There was no gray area, but Don Thomas the way he explained it to me, he said they work diligently to keep you in a geographical area near [your] house."). *See also* doc. 22-1 at 18 (Numeracky's testimony that "people move every week" and "Sperry is an over-the-road job").

4

after her proposed transfer to the Minnesota area. The court analyzes Andrews's claims separately below.

### A. Race Discrimination (Count I)

Title VII and Section 1981 make it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1); *see also* 42 U.S.C. § 1981. Where, as here, Andrews is attempting to prove intentional discrimination through circumstantial evidence, the court utilizes the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof. Under this method, Andrews bears the burden of establishing a *prima facie* case of race discrimination. *See Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If Andrews satisfies her initial burden, "then [Sperry Rail] must show a legitimate, non-discriminatory reason for its employment action." *Id.* (citation omitted). "If it does so, then [Andrews] must prove that the reason provided by [Sperry Rail] is a pretext for unlawful discrimination." *Id.* (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that [Sperry Rail] intentionally discriminated against [Andrews] remains at all times with [Andrews]." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

Andrews contends that Sperry Rail discriminated against her "by refusing to promote her [to the position of chief operator or driver trainer[3]] while advancing white employees with less qualifications." Doc. 1 at 5. To establish a failure to promote, Andrews must show that she is (1) a member of a protected class, (2) was qualified for and applied for promotion to chief operator or driver trainer, (3) was rejected, and (4) that other equally or less qualified employees who were not members of her protected class were promoted. *See Evans v. McClain, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997). Sperry Rail contends that Andrews cannot establish a *prima facie* case. Doc. 21 at 21. Among other things, Sperry Rail contends that Andrews is not qualified: it "did not consider [Andrews] qualified for [a promotion] based on her inability to work well with her Field Supervisors and Chief Operators," and that Andrews "scream[ed] at her coworkers and supervisors on more than one occasion." *Id.* at 21–22. "Whether an employee possesses the qualifications for a position . . . is generally distinct from the issue whether he performed the job satisfactorily." *Clark v. Coats & Clark, Inc.*, 990

---

[3] Although Sperry Rail disputes the existence of any "driver trainer" position, doc. 21 at 12, Andrews testified that the position exists and that she knows of employees who have worked as driver trainers, doc. 22-3 at 24. Because the court must construe the evidence in the light most favorable to the non-movant, *see Wideman v. Wal-Mart Stores*, 141 F.3d 1453, 1454 (11th Cir. 1998), the court will assume, for purposes of this analysis, that the driver trainer position exists. Andrews also desires promotion to an unnamed position she proposed to create. Doc. 22-3 at 26. The claim for this position fails, because Sperry Rail has no duty to create a new position to accommodate Andrews's desire for promotion. *See Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1273 (11th Cir. 2003) (a plaintiff is "not entitled to a promotion *unless* a vacancy ar[ises] or a new position [is] created") (emphasis in original).

6

F.2d 1217, 1227 n.3 (11th Cir. 1993). Therefore, in light of Andrews's multiple commendations, *see, e.g.*, doc. 33-1 at 11 & 17, merit-based pay raises, *see* doc. 22-3 at 31, and promotion from driver to driver mechanic, *see id.* at 6, the court will assume for purposes of the *prima facie* analysis that Andrews is qualified.[4] *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999).

Still, summary judgment is due on the race promotion claim because Andrews failed to establish that Sperry Rail promoted equally or less qualified individuals outside of her protected class. For example, the only individual Andrews identifies that Sperry Rail promoted to the chief operator position was Clyde Chapman, who is also African-American, and is in the same protected class. *See* doc. 22-3 at 12, 31. For the same reasons, Andrews also cannot rely on James Presley to support her claim for the driver trainer position. *Id.* at 24. As for "Emily Barnes [Caucasian female], and another guy," the other two persons Andrews identifies for the driver trainer position, Andrews provides no information regarding the race of the "[]other guy" or this guy or Emily Barnes's relative qualifications. *See Springer*, 509 F.3d at 1347 ("The ultimate burden of persuading the trier of fact that [the employer] intentionally discriminated against

---

[4] Sperry Rail also contends that Andrews cannot establish that it rejected her for a promotion. *See* doc. 21 at 21. However, in light of Sperry Rail's failure to brief this contention, the court will not consider it.

[the plaintiff] remains at all times with the plaintiff."). Accordingly, Andrews has failed to meet her burden of establishing a *prima facie* case of race discrimination.

Alternatively, Andrews's race claim fails because Sperry Rail has articulated a legitimate, nondiscriminatory reason for failing to promote Andrews — *i.e.*, Andrews's negative attitude, as evidenced by her verbal altercation with Warren, and "screaming" at Numeracki when he questioned her expense report submissions. Andrews does not dispute that she was involved in a verbal altercation with Warren[5] or that she argued with Numeracki about the accuracy of her expense reports. Andrews states instead that her employment record contains numerous commendations from other supervisors regarding her attitude and general work performance, *see* doc. 32 at 2, which, presumably, she is contending overcomes the two cited incidents. This contention, however, fails to demonstrate that the two specific incidents upon which her supervisors' perception of her was based did not occur. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Wilson v. B/E Aero, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). Moreover, this court has no basis to say that Sperry Rail should have weighed Andrews's overall record and find, on balance, that she received more commendations than negatives for her attitude. After all, "in enacting Title VII Congress did not intend

---

[5] After Warren provided Andrews unclear instructions on how to fix a tire, Andrews stated, "Wait a minute. You don't have to talk to me like that, Jamarion," and said, "I'll do whatever you want me to do, but I don't understand you. You've got me doing your job and shit." Doc. 22-3 at 15–16.

8

to transform federal courts into a super-personnel department that reexamines an entity's business decisions." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013). Rather, the court's "job is instead to determine whether the employer gave an honest explanation to justify its hiring decisions. If the employer gives one, we're not in a position to second-guess [its] business judgment." *Id.*[6]

For all of these reasons, Sperry Rail's motion is due to be granted as to Count I.

**B. Sex Discrimination (Count II)**

Andrews's sex discrimination claim is also based on Sperry Rail's failure to promote her. *See* doc. 1 at 7. Relevant here, Andrews challenges the promotions of Chapman and Presley (both males) to the chief operator and driver trainer positions.[7] Assuming that Andrews can establish a *prima facie* case of sex

---

[6] As part of her pretext showing, Andrews cites an alleged statement by Numeracki during a conversation with Clyde Chapman outside of Andrews's presence that purportedly "made reference to the fact that by Clyde being from the south he ought to be used to taking orders because — something to the effect about how we picked cotton for years." Doc. 22-3 at 20. Andrews has failed to tie this remark to any employment decision involving Andrews or to show that Numeracki is the one who denied her promotional opportunities. As such, this stray remark is insufficient to show pretext. *See Short v. Mando Am. Corp.*, 601 F. App'x 865, 874 (11th Cir. 2015) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002)) ("While we agree that a stray remark by a decision maker can be considered circumstantial evidence of discriminatory animus, we nevertheless conclude that this particular remark was 'isolated and unrelated to the challenged employment decision' and therefore insufficient by itself to establish a genuine fact issue on pretext.").

[7] Andrews also alleges that Sperry Rail "does not advance women in the field positions and restricts women largely to the human resources and administrative functions." Doc. 1 at 7. However, Andrews has not generated any probative statistical evidence during discovery to support this contention. As she puts it, "[i]n responding to interrogatories, [the] company identifies twenty-five men and no [women] that were promoted to chief operator. . . . While

discrimination, Sperry Rail must present a legitimate, nondiscriminatory reason for failing to promote Andrews, *see Burke-Fowler*, 447 F.3d at 1323, which Sperry Rail does by relying again upon its contention that Andrews behaved insubordinately or disrespectfully toward Warren and Numeracki. As explained in Part III.A, *supra*, Andrews fails to rebut the two incidents Sperry Rail cites, and Andrews's effort to recast the company's reason by citing to her overall performance is unavailing. *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (internal quotation marks omitted) ("The plaintiff cannot recast the reason but must meet it head on and rebut it.").

The claim also fails because Andrews has not presented any credible evidence of sex discrimination. The incidents Andrews cite fail to rise to the requisite level. Specifically, even if Andrews is correct that Warren convinced Numeracki to reprimand Andrews because of "their friendship" or because of personal animosity between Andrews and Warren's uncle, doc. 22-3 at 21, "[p]ersonal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex

---

Andrews does not have statistics on how many women applied for Chief Operator through the years, zero does have some meaning." Doc. 32 at 17. This generalized allegation does not support Andrews's sex discrimination claim. *See, e.g.*, *Lee v. GTE Fla.*, Inc., 226 F.3d 1249, 1255 n.2 (11th Cir. 2000) ("[The plaintiff's] claim that [the defendant] had a poor history of promoting women is too generalized to have any statistical significance. She claims that [the defendant] only promoted a total of four women into management positions and only hired two women into staff positions. Notably, however, [the plaintiff] does not tell us how many people [the defendant] promoted in total and she provides no evidence as to relative qualifications.").

discrimination case by accusation." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986). Moreover, although Andrews believes that Warren encouraged Numeracki to reprimand her because Andrews is "a black woman," and believes "that would [not] have happened had [she] been a male on [the] truck," doc. 22-3 at 17, 21, Andrews has presented no evidentiary support for this contention, and admits that Warren never uttered any gender-based remarks to her or in her presence, *id.* at 12–13.

Unfortunately for Andrews, "unsupported speculation [that Warren or Numeracki must have acted because of Andrews's gender] does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)) (ellipsis and emphasis in *Cordoba*, internal quotation marks omitted). Other than Andrews's own belief that gender animus motivated the disciplinary warnings, which purportedly led to Sperry Rail's failure to promote her, the record contains no evidence of sex discrimination. Therefore, Sperry Rail's motion is also due to be granted as to Count II.

## C. Retaliation (Count III)

Finally, Andrews alleges retaliation "in the forms of discipline and transfer for opposing and reporting unlawful discrimination." Doc. 1 at 9. To establish a *prima facie* case, Andrews must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal relation between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). As an initial matter, there is no evidence that Andrews engaged in any protected expression prior to the reprimand she challenges. Accordingly, any retaliation claim based on the reprimand fails.

The transfer claim also fails because Sperry Rail initiated it before Andrews filed her EEOC charge[8] and also because it does not constitute an adverse employment action. Doc. 21 at 15. "A lateral transfer, without more, does not amount to an adverse employment action." *Addison v. Fla. Dep't of Corr.*, No. 16-10579, 2017 U.S. App. LEXIS 5280, at *7 (11th Cir. 2017). Rather, "a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). Here, however, Andrews undisputedly did not suffer a reduction in pay, prestige, or responsibility. To the contrary, "payroll records show that

---

[8] *See Walton-Horton v. Hyundai of Ala.*, 402 F. App'x 405, 409 (11th Cir. 2010) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)) ("Employers need not suspend previously planned [adverse employment actions] upon discovering [protected activity].") (alterations in *Walton-Horton*).

[Andrews's] pay went from approximately $43,754 in 2013 to $53,564 in 2014, then to $65,585 in 2015." Doc. 22-4 at 3.[9] Moreover, Andrews has expressed interest in the chief operator job to Yelverton, and Yelverton "wants to train [her]." Doc. 22-3 at 26. To that end, Yelverton has mentored Andrews regarding "the actual nuances you go through [as a chief operator] to look at that screen and try . . . to make a judgment call and how to decipher what would or could not be a defect." *Id.* Finally, Andrews states that Yelverton is "one of the best chief operators [she] [has] ever worked with," that Yelverton is "great at his job," and that their team receives "great reviews." Doc. 22-3 at 29. This evidence belies Andrews's contention that the transfer resulted in a pay decrease or loss of responsibility or prestige.

## IV. CONCLUSION

For the reasons stated above, Sperry Rail's motion for summary judgment, doc. 20, is due to be granted. The court will enter a separate order contemporaneously herewith.

**DONE** the 21st day of June, 2017.

_____
      **ABDUL K. KALLON**
  UNITED STATES DISTRICT JUDGE

---

[9] The company transferred Andrews to Yelverton's team in 2014. Doc. 22-3 at 10.